CENTRAL TRUST CO. *v.* ST. LOUIS, A. & T. RY. CO.

(*Circuit Court, E. D. Arkansas.* February 27, 1890.)

1. CORPORATION—CONSOLIDATION—RAILROAD COMPANIES.
   An Arkansas corporation, owning a line of railroad in Arkansas, consolidated with a Missouri corporation, owning a line of railroad in Missouri. By the consolidation, the consolidated company became the owner of the road in both states, but in Arkansas it is to be regarded as an Arkansas corporation, and in Missouri as a Missouri corporation.

2. RECEIVERS—TERMS—MORTGAGE—RAILROAD COMPANIES.
   When a receiver is appointed for a railroad, the better practice is, for the judge or court making the appointment, to stipulate at the time, and as a condition of the appointment of a receiver, what debts and liabilities of the railway company shall be made a charge on the property and paid by the receivers. If the mortgagee is unwilling to take a receiver on the terms imposed, the foreclosure can proceed without a receivership. If no order is made when the receiver is appointed, it may be made afterwards.

3. SAME—ACTIONS—JURISDICTION OF STATE COURTS.
   When a state court has jurisdiction of the parties and the subject-matter, its judgment against the receiver of a United States court is as final and conclusive as it is against any other suitor.

4. FEDERAL COURTS—JURISDICTION.
   The United States circuit courts are not invested with appellate or supervisory jurisdiction over the state courts, and cannot annul, vacate, or modify their judgments. This rule is not affected by the last clause of the third section of the act approved August 13, 1888, (25 U. S. St. 436.)

5. APPEAL—BOND—RECEIVERS.
   Receivers appealing in good faith from the judgments of the state courts should not be required to give *supersedeas* bonds.

(*Syllabus by the Court.*)

In Equity.
*Phillips* and *Stewart*, for complainant.
*J. M. & J. G. Taylor*, for defendant.
*S. H. West*, for the receivers.

CALDWELL, J. In 1886 the St. Louis, Arkansas & Texas Railway Company in Arkansas and Missouri, a corporation organized under the laws of the state of Missouri, acquired the title to a railroad, previously built by another company, running from Bird's Point, in Missouri, to Texarkana, Ark. On the 4th day of May, 1886, this Missouri corporation executed a mortgage to the plaintiff, to secure the payment of its first mortgage bonds, on its road and appurtenances in Arkansas and

Missouri.. On the 4th day of August, 1887, the same company sold that part of its road in Arkansas to the Arkansas & Southern Railway Company, a corporation organized under the laws of Arkansas. On the 15th day of August, 1887, the Missouri corporation, viz., the St. Louis, Arkansas & Texas Railway Company in Arkansas and Missouri, then owning the road running from Bird's Point, Mo., to the Arkansas state line, and the Arkansas corporation, viz., the Arkansas & Southern Railway Company, then owning the road running from the Missouri state line to the Texas state line at Texarkana, with branches, were consolidated; the consolidated company retaining the name of the Missouri company, *i. e.*, the St. Louis, Arkansas & Texas Railway Company in Arkansas and Missouri. On the 20th day of October, 1887, the consolidated company executed its mortgage on its road and branches in Arkansas and Missouri to the plaintiff to secure an issue of its bonds; and on the 15th day of August, 1888, it executed another mortgage to the plaintiff on the same property to secure a second issue of its bonds. This suit is brought to foreclose the three mortgages mentioned, on the road and property in Arkansas. The amended and supplemental bill filed in this district alleges the defendant is "a corporation created by and existing under the laws of the state of Arkansas, * * * and a resident and citizen of said state of Arkansas." This is a correct statement of the legal *status* of the defendant in this state. The consolidated company owns the road in both states; but in Arkansas it is an Arkansas corporation, and in Missouri it is a Missouri corporation. Acts Ark. 1889, p. 43; *Railway Co.* v. *Whitton's Adm'r,* 13 Wall. 270; *Muller* v. *Dows,* 94 U. S. 444.

On the 13th day of May, 1889, on the filing of the bill to foreclose, Circuit Judge BREWER appointed a receiver, and directed "that the said receiver pay, out of any income or revenue which may come into his hands, all just claims and accounts for labor, supplies, professional services, salaries of officers and employes, and regular traffic balances, remaining unpaid, and that have been earned or mature within six months prior to the date of this order." This order was not intended to be final. Its purpose was to confer on the receiver a present authority to pay wages due employes and such like claims, the payment of which ought not to be delayed. The final order to be made on the subject was left for future action. Creditors of the railway company have filed intervening petitions, praying that their demands may be decreed to be a lien on the mortgaged property, and the receivers directed to pay them out of the earnings of the road, if sufficient for the purpose, and, if not, then out of the proceeds of the sale of the road.

A statute of this state approved March 19, 1887, provides "that every mechanic, builder, artisan, workman, laborer, or other person, who shall do or perform any work or labor upon, or furnish any materials, machinery, fixtures, or other thing towards, the equipment or to facilitate the operation of any railroad, and all persons who shall sustain loss or damage to person or property from any railroad for which a liability may exist at law, shall have a lien therefor upon the road-bed, buildings, equipments, income, franchises, and all other appurtenances of said rail-

road, superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees, and beneficiaries under trusts, or owners.    But said lien shall not be effectual unless suit shall be brought upon the claim within one year after it accrued.    Said lien shall be mentioned in the judgment rendered for the claimant in an ordinary suit for the claim, and may be enforced by ordinary levy and sale, under final or other process, at law or in equity."

This act was in force before the execution of the two mortgages by the consolidated company, and, as against these mortgages, it is conceded that the general creditors, coming within the purview of the act, have a prior lien on the mortgaged property; and it is claimed that under the statutes of this state, as construed by its supreme court, the first mortgage executed by the Missouri corporation creates no lien on the personal property of the company in this state, as against the claims of the general creditors of the corporation.    *Watson* v. *Lumber Co.*, 49 Ark. 83, 4 S. W. Rep. 62.

It is not necessary to decide whether this claim is well founded, because I do not understand that either the trustee, representing the bondholders, or the railway company, resist the payment of the debts and demands against the railway company incurred in the operation of the road in this state, for the brief period that has intervened since the execution of the mortgages.    The statute quoted covers nearly or quite all the liabilities of the company in this state.    The few debts due from the railway company, which accrued more than a year before the appointment of a receiver, are of such a meritorious character, and are so small in amount, that it is believed the best interests of those interested in the property would be promoted by paying them.    I do not understand this view of the matter to be antagonized by the plaintiff or defendant.    The attitude of the parties in this respect is commendable.    It seems to have been understood at the time the receiver was appointed that provision would be made for the payment of all the debts and liabilities incurred by the present defendant since the execution of the mortgages.    In an official correspondence between the judge of the district court and the circuit judge, on the subject of the debts of the railway company which the receivers should be authorized to pay, and which should be made a charge on the *corpus* of the mortgaged property, Circuit Judge BREWER, in a letter to the district judge, says:

"\* \* \* I did not understand from the parties making the application for a receiver that there was any desire or thought of cutting off any just claims accruing during the brief period which has elapsed since their mortgage was given, and, if counsel or party had any such idea, they much mistake my judgment in the premises. \* \* \* "

The following order will therefore be entered:

On this day comes the plaintiff, by Phillips and Stewart, its attorneys, and the defendant, by J. M. & J. G. Taylor, its attorneys, and the receivers, by S. H. West, their attorney, and S. W. Fordyce, one of the receivers, in proper person, and the proper order to be made by the court

on the subject of the payment of debts and liabilities of the defendant company by the receivers came up for consideration; and, the court being now well and sufficiently advised in the premises, it is ordered that the following debts and demands against the company which have accrued since the execution of the mortgages in suit—viz., the debts due from the railroad company for tickets and freight balances, and for work, labor, materials, machinery, fixtures, and supplies of every kind and character, done, performed, or furnished in the construction, extension, repair, equipment, or operation of said road and its branches in this state, and all liabilities incurred by said company in the transportation of freight and passengers, including damages to person and property, and for breaches of contracts for the transportation of persons and property, and all claims and demands upon which suit has been heretofore brought or judgment recovered in the United States or state courts in this state, together with all debts and liabilities which the receivers may incur in operating said road in this state, including claims for injuries to persons and property—shall constitute a lien on said railroad, and all property appurtenant thereto, superior and paramount to the lien of the mortgages set out in the bill, as provided by the statute of this state, and said road shall not be released or discharged from said lien until said debts and liabilities are paid. The receivers are authorized and directed to pay all such debts and liabilities out of the earnings of the road, or out of any fund in their hands applicable to that purpose; and, if not sooner discharged, then the same shall be paid out of the proceeds of the sale of the road.

The better practice is for the judge or court appointing a receiver to stipulate at the time, and as a condition of the appointment of a receiver, what debts and liabilities of the railway company shall be made a charge on the property, and paid by the receivers. If the mortgagee is unwilling to take a receiver on the terms imposed, the foreclosure can proceed without a receivership. But, if no order is made when the receiver is appointed, it may be made afterwards. *Fosdick* v. *Schall*, 99 U. S. 235, 253; *Blair* v. *Railroad Co.*, 22 Fed. Rep. 471.

No complaint was made in this case, because the order was not made when the receiver was appointed. The order now made was, it seems, then contemplated. The following additional orders will be entered:

For all liabilities incurred by the receivers in the operation of the road, they may be sued in any court of competent jurisdiction, or the claimant may, at his election, file an intervening petition in this cause, and have his demand adjudicated in this court. Judgments obtained against the receivers in the state courts which are not appealed from, and judgments against the company not appealed from, and superseded on demands which the receivers are by the terms of this order required to pay, will, upon filing a transcript of the same in this court, be audited and allowed as of course, as adjudicated claims against the receivership. Nothing herein contained shall authorize the levy of an execution, or any other writ or process, on the property in the hands of the receivers, or any interference whatever with their custody or possession of the same.

The court is asked to qualify the order relating to judgments recovered in the state courts, by adding a proviso to the effect that, when it is shown that the judgment is for a grossly excessive amount, this court will reduce it to a just and reasonable sum.    This court will not entertain the suggestion that its receiver will not obtain justice in the state courts. The act of congress gives the right to sue the receiver in the state court. *Trust Co.* v. *Railway Co.*, 40 Fed. Rep. 426.    The state court has jurisdiction of the parties and the subject-matter, and its judgment against the receiver of this court is as final and conclusive as it is against any other suitor.    The right to sue the receiver in the state court would be of little utility, if its judgment could be annulled or modified at the discretion of this court.    It is open to the receiver to correct the errors of the inferior courts of the state by an appeal to the supreme court.    But this court is not invested with appellate or supervisory jurisdiction over the state courts, and cannot annul, vacate, or modify their judgments. *Randall* v. *Howard*, 2 Black, 585; *Nougue* v. *Clapp*, 101 U. S. 551.

It is true the act of congress provides that, when the receiver is sued, the "suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice."    This clause of the act establishes no new rule, but is merely declaratory of the previously existing law.    The receiver holds the property for the benefit of all persons having any interest in or lien upon it.    The road is a unit.    Broken into parts, or deprived of its rolling stock, its value would be greatly impaired. Suits, therefore, which seek to deprive the receiver of the possession of the property, and all process the execution of which would have that effect, are subject to the control of the court appointing the receiver, so far as may be necessary to the ends of justice.    The marshaling of the assets, and the orderly distribution of the fund or property according to the rights and equities of the several parties in interest, is not to be interfered with by the judgment or process of the state court.    The judgment of the state court is conclusive as to the amount of the debt, but the time and mode of its payment must be controlled by the court appointing the receiver.

The receiver should have the right to appeal from the judgments of the state courts.    Appeals should not be taken for delay, but that justice may be done.    When the receiver, in good faith, takes an appeal, he should not be required by this court to execute a *supersedeas* bond.    The receiver is an officer of the court.    His possession of the property is the possession of the court.    The property of the railroad stands as security for all the obligations of the court incurred in its operation.    The receiver, no more than the judge of the court, should be required to become personally bound as a condition of his appealing, in good faith, from the judgment of a state court rendered against him in his official capacity.    The court will not part with the possession of the property until the obligations incurred by the receiver are paid, or proper provision is made to secure their payment. *Dow* v. *Railroad Co.*,

20 Fed. Rep. 267, 269. The objection of plaintiff's counsel to the clause of the order, as originally drawn, which required the receiver to execute *supersedeas* bonds in cases which he appealed, is sustained, and that clause will be stricken out.