## WILLCOX v. JONES.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1910.)

### No. 928.

1. RECEIVERS (§§ 186, 187*)—ACTION AGAINST FEDERAL RECEIVER IN STATE COURT—CONCLUSIVENESS AND EFFECT OF JUDGMENT.

Under Act Aug. 13, 1888, c. 866, § 3, 25 Stat. 436 (U. S. Comp. St. 1901, p. 582), which authorizes the suing of a federal receiver in respect of any act of his in carrying on the business without the previous leave of the court which appointed him, but such suit to be subject to the general equity jurisdiction of said court so far as the same shall be necessary to the ends of justice, a judgment rendered against such a receiver by a state court in an action brought against him for the death of an employé is conclusive on the federal court as to the right to recover, and the amount

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that should be recovered, but the time and manner of payment is within the control of the federal court.

[Ed. Note.—For other cases. see Receivers, Cent. Dig. §§ 375, 377½; Dec. Dig. §§ 186, 187.*

Actions by and against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.]

**2. RECEIVERS (§ 187*)—PETITION TO ENFORCE JUDGMENT AGAINST RECEIVER—PLEADING.**

A petition in intervention in a federal court in the matter of a receivership, by one who has recovered a judgment against the receiver in another court, is a special proceeding for the purpose of presenting the judgment for adjustment and payment, and the court in its discretion has power to permit the pleadings to be reformed so as to properly present such matter.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 377½; Dec. Dig. § 187.*]

**3. RECEIVERS (§ 186*)—JUDGMENT AGAINST RECEIVER—INTEREST.**

A judgment obtained against a federal receiver in a state court bears interest at the rate provided by the laws of the state, which in South Carolina under Civ. Code 1902, § 1660, is 7 per cent.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 186.*]

Appeal from the Circuit Court of the United States for the District of South Carolina, at Charleston.

Petition in intervention by Leila A. Jones, administratrix of the estate of James A. Jones, deceased, against P. A. Willcox, receiver, in suit of the Meyer Rubber Company against the Georgetown & Western Railroad Company. From an order granting the petition (174 Fed. 731), the receiver appeals. Affirmed.

On the 9th day of December, 1902, the Circuit Court made an order appointing Freeman S. Farr as receiver of the Georgetown & Western Railroad Company, such order being made in the case of the Meyer Rubber Company, a corporation of the state of New Jersey, plaintiff, against the Georgetown & Western Railroad Company, a corporation of the state of South Carolina, defendant. The receiver so appointed was authorized and directed to carry on the business of the defendant company as a common carrier. On the 28th day of February, 1905, the receiver so appointed died, and P. A. Willcox was appointed as his successor. On the 3d day of December, 1904, while the receiver was engaged in operating the railroad of the said company, one of the locomotives engaged in hauling a log train became derailed, resulting in the killing of James A. Jones, the engineer in charge of the said locomotive. On the 2d day of February, 1906, Leila A. Jones, the wife of the said James A. Jones, deceased, having been duly appointed as administratrix of the estate of her deceased husband, commenced an action as such administratrix in the court of common pleas for Georgetown county, state of South Carolina, against the said P. A. Willcox, as receiver, for $60,000 damages for the alleged negligent killing of her husband, such action being brought for the benefit of herself and her infant child, as wife and daughter, respectively, of the said James A. Jones, deceased. Such action being at issue, the same was tried at the June term of such court, in 1906, the jury rendering a verdict in favor of the plaintiff for $7,500. A motion was made by the defendant for a new trial, and, this motion being overruled, an appeal was taken to the state Supreme Court. Subsequently the state Supreme Court rendered its judgment dismissing the appeal and affirming the judgment of the lower court. A petition for a rehearing was filed, but this petition was refused, and the mandate of the Supreme Court was transmitted to the Circuit Court. On February 5, 1907, judgment was duly entered on such verdict in the sum of $7,986.33, such sum including interest on the amount of the verdict to that date and the plaintiff's costs and disbursements. On April 28, 1908, judgment was duly entered in the further sum of $79.50, the same being adjudged as costs and disbursements on the ap-

peal to the Supreme Court. In the month of June, 1908, such judgment not having been paid, the said Γ ^ila A. Jones, as administratrix, filed her petition of intervention herein, setti ,, up her judgment against the receiver, and praying an order of the court directing payment thereof. On motion of the attorneys for the receiver an order was made by the court referring the cause to Special Master D. B. Gilliland, with instructions to take the testimony on the issues raised and report the same to the court. Such testimony having been taken and reported by the special master, the matter came on and was heard by the court on the 3d day of April, 1909. On the hearing counsel for the receiver contended, first, that the judgment rendered in the state court was not conclusive, the court having authority to go behind such judgment for the purpose of inquiring into the justice of the cause; and, second, that the intervener, if entitled to have her judgment paid, was not entitled to interest thereon after affirmance thereof by the state Supreme Court. These contentions Judge Brawley overruled, holding that the judgment rendered by the state courts was conclusive, and that the intervener was entitled to interest on her judgment at the legal rate of 7 per cent. From this judgment, appeal is taken upon the several grounds set out in the record.

P. A. Willcox and H. E. Davis (Willcox & Willcox and Le Grand Walker, on the brief), for appellant.

Walter Hazard and W. B. Gruber (Howell & Gruber, on the brief), for appellee.

Before PRITCHARD, Circuit Judge, and WADDILL and CONNOR, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). The principal question for our consideration is as to whether this court has the power in this proceeding to review the action of the state court wherein the intervener obtained a judgment against the receiver. The intervener instituted an action in the state court of South Carolina against the receiver, and obtained judgment against him for the sum of $8,065.63, together with interest on the sum of $7,845.61 from February 5, 1907. From this judgment an appeal was taken to the Supreme Court of the state, and the judgment of the lower court was affirmed by that court. The intervention upon which this suit is based is in pursuance of Act Aug. 13, 1888, c. 866, § 3, 25 Stat. 436 (U. S. Comp. St. 1901, p. 582) which reads as follows:

"That every receiver or manager of any property appointed by any court of the United States may be sued in respect to any act or transaction of his in carrying on the business connected with such property without the previous leave of the court in which such receiver or manager was appointed; but such suits shall be subject to such equity jurisdiction of the court in which such receiver or manager was appointed so far as the same shall be necessary to the ends of justice."

Prior to the enactment of this statute a receiver could not be sued without leave of the court by which he was appointed. This was a rule of universal application in so far as the federal courts were concerned; but by the enactment of this statute receivers may be sued in any court of competent jurisdiction. The suit in the state court was to recover damages for personal injuries caused by the negligence of the receiver or his agents in operating a railroad as a common carrier, and was, therefore, a common-law proceeding. A claimant may intervene, and thus have the validity of his claim passed upon by the court appointing the receiver, or under this statute he may institute suit in

another court. If the claimant intervenes in the suit wherein the receiver is appointed, he thereby waives his right to a trial by jury, which is contemplated by this section.

In the case of Flippin v. Kimball et al., 87 Fed. 258, 31 C. C. A. 282, this court, among other things, said:

"The appellant, Flippin, could have proceeded in an action at law against the receivers without leave of the court. 25 Stat. 433, Act 1888. Of his own accord he intervened in a suit in equity, and submitted himself to the jurisdiction of the court. By doing this he waived his right to a trial by jury, for it is a fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction."

In that case the petitioner could have instituted a suit against the receivers in the state court, and by doing so would have been entitled to a trial by jury. This statute is framed so as to permit the United States courts to fully administer estates that may be placed in the hands of receivers, and while permission is granted to institute suits against receivers, still there is nothing in the statute which in the slightest degree authorizes the doing of any act calculated to hinder, delay, or embarrass a court of equity in the exercise of its functions.

In Street's Federal Equity Practice, § 2688, in referring to the reservation contained in the second clause of this section, it is said:

"The most important feature of this statute so far as regards equity practice is that of the reservation contained in the second clause. This reservation has at least two important effects, namely, (1) it prevents the creditor who is thus permitted to sue from obtaining any undue advantage over other creditors or claimants, and (2) it prevents such creditor from depriving the receiver, and, through the receiver, the court, of the possession or control of any property in his hands by virtue of the receivership."

In the case of St. Louis S. W. Ry. Co. v. Holbrook, 73 Fed. 112, 19 C. C. A. 385, this question was passed upon by the Circuit Court of Appeals for the Fifth circuit. In that case the appellee had received severe personal injuries, which he charged were caused by the servants of the receivers in operating trains on their road. He began a suit against the receivers in the state court of the state of Texas. The receivers appeared and answered. On November 10, 1890, the appellee secured a judgment against the receivers for the sum of $10,000. In Texas such actions (all civil actions) are tried without a jury unless a jury is demanded by one of the parties. Neither party demanding a jury, the case was tried, upon issues of fact as well as law, by the judge. A writ of error to the Court of Civil Appeals of that state was sued out, but was dismissed because the writ was not taken in time. The appellee then filed an intervention in the Circuit Court. That court held that the judgment of the state court was conclusive as to the facts found and as to the amount of the appellee's claim against the receivers, and that the claim was a charge acquired by the appellant under the decrees mentioned above. The case was taken by appeal to the Circuit Court of Appeals. That court, in disposing of the matter, said:

"The assignment of errors presents these two questions: (1) Was the judgment of the state court conclusive as to the right of the plaintiff to recover, and as to the amount that should be recovered? (2) Is the claim thus established a charge on the property acquired under the decrees of the court?

"The first of these questions was directly presented to this court, at a former term, in the case of Dillingham v. Hawk, 9 C. C. A. 101, 60 Fed. 495 [23 L. R. A. 517], and was answered in the a   native.   Without expressly approving all of the reasoning of the opinion, which did not then receive the full concurrence of all the judges rendering that decision, we adhere to the conclusions then expressed as to the sound construction of the third section of the act of March 3, 1887 [c. 373, 24 Stat. 554 (U. S. Comp. St. 1901, p. 582)].   In the state court in which appellee's action went to judgment, the parties had the right to have their case submitted to a jury, on a demand therefor.   They chose to not demand a jury.   Section 649 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 525] provides for trying issues of fact in civil cases by the court, without the intervention of a jury, and the finding of the court upon the facts has the same effect as the verdict of a jury.   And where the submission of a civil case is made without the stipulation in writing, the judgment cannot be questioned, if it is warranted by the pleadings.   The analogies, therefore, would seem to indicate that where parties could try their issues before a jury, and choose to try them without a jury, the finding of fact and judgment of the court would have at least the same effect as the verdict of a jury."

· It is contended by counsel for the appellant that this statute gives the court appointing a receiver or manager the right to review any judgment that may be recovered in a state court against the receiver or manager; that the language "subject to the general equity jurisdiction of the court" means that the court appointing the receiver or manager is to exercise full and complete jurisdiction over such suit and to inspect and review the proceedings of the court in which it may be instituted.   To adopt this construction would be to constitute such court a court of review quoad cases of this character.   The language employed is not susceptible of such construction, even if it had been the intention of Congress to confer such power; but it is manifest that it was not the intention of Congress to invest the courts of the United States with jurisdiction to that extent.   This statute, in the first place, was intended to give claimants an opportunity to institute suit without previous leave of the court in which a receiver may be appointed, and leaves them free to institute such suit in a state court.   Why authorize a claimant to institute suit against a receiver in another court unless it was intended thereby to permit such party to have his rights determined according to the well-defined rules of legal procedure as in this instance?   Under such circumstances, to hold that a court appointing a receiver has a right to inspect and review the entire proceedings would render this statute a useless piece of legislation.   The proviso, "but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed so far as the same shall be necessary to the ends of justice," was intended to leave the court wherein the receiver was appointed in undisputed control of the property in the possession of its receiver, with full power to manage and control the same, to distribute the funds, and to adjust the equities and priorities between claimants, according to the rights of the several parties.

In the case of Central Trust Co. v. St. L., A. & T. R. R. Co. (C. C.) 41 Fed. 551, Caldwell, C. J., in discussing this question, said:

"The court is asked to qualify the order relating to judgments recovered in the state courts by adding a proviso to the effect that when it is shown that the judgment is for a grossly excessive amount this court will reduce it to a just and reasonable sum.   This court will not entertain the suggestion that its

receiver will not obtain justice in the state courts. The act of Congress gives the right to sue the receiver in the state court. Central Trust Co. v. St. Louis, A. & T. R. Co., 40 Fed. 426. The state court has jurisdiction of the parties and the subject-matter, and its judgment against the receiver of this court is as final and conclusive as it is against any other suitor. The right to sue the receiver in the state court would be of little utility if its judgment could be annulled or modified at the discretion of this court. It is open to the receiver to correct the errors of the inferior courts of the state by an appeal to the Supreme Court. But this court is not invested with appellate or supervisory jurisdiction over the state courts, and cannot annul, vacate, or modify their judgments. Randall v. Howard, 2 Black (U. S.) 585 [17 L. Ed. 269]; Nougue v. Clapp, 101 U. S. 551 [25 L. Ed. 1026].

"It is true that the act of Congress provides that, when the receiver is sued, the 'suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice.' This clause of the act established no new rule, but is merely declaratory of the previously existing law. The receiver holds the property for the benefit of all persons having any interest or lien upon it. The road is a unit. Broken into parts, or deprived of its rolling stock, its value would be greatly impaired. Suits, therefore, which seek to deprive the receiver of the possession of the property, and all process, the execution of which would have that effect, are subject to the control of the court appointing the receiver, so far as may be necessary to the ends of justice. The marshaling of the assets, and the orderly distribution of the fund or property according to the rights and equities of the several parties in interest, is not to be interfered with by the judgment or process of the state courts. The judgment of the state court is conclusive as to the amount of the debt, but the time and mode of its payment must be controlled by the court appointing the receiver."

In the absence of a provision of this character, this statute would lead to interminable confusion and conflict of jurisdiction. Therefore, Congress has wisely provided that the courts of the United States in such cases shall have ample power to settle and adjust all equities arising in such suits without hindrance, by providing that they shall be subject to the general equity jurisdiction of such courts, thus, among other things, giving a court of the United States the power to say whether the judgment thus obtained is a first lien on the property in the hands of the receiver, to determine when the same shall be paid, the order of its payment, and cases might occur in which it would be necessary for the court to determine as to whether the court wherein the judgment was rendered had jurisdiction. Thereby the courts of the United States are clothed with ample power, by injunction, to prevent judgment creditors from harassing a receiver or interfering with the property in his possession. The final settlement and adjustment of all claims and the payment of all moneys are to be made subject to the decree of the court appointing the receiver. To this extent the power of such court is supreme. The contention that it is contemplated by this statute that the United States courts should at all times have jurisdiction over such suits in the state courts to such an exent as to review the action of such courts cannot be sustained upon principle, nor is there anything in the statute to warrant such contention.

Among other things the appellant insists that the court erred in permitting the amendment which gave the petitioner the right to "retract the allegations of the seventh paragraph of her original petition" and to allege instead that she had filed in the court of common pleas

for Georgetown county, S. C., a complaint substantially alleging the matters stated in said paragraph. In the seventh paragraph of the petition filed in the court below it is alleged that the death of the party injured was due to the negligence and willfulness of the receiver in the operation of the road. This paragraph was denied by the receiver. Therefore, the receiver insists that this raised an issue which should have been tried by the court below and that the court had no power to strike out a portion of the paragraph upon which such issue was based. It is insisted that a bill in equity cannot be amended so as to set up a new cause of action, and that this petition should be treated as being in the nature of a bill in equity. This would be true, ordinarily, but this is in the nature of a special proceeding, and the pleadings clearly show that it was the purpose of the intervener to acquaint the court below with the fact that she had obtained a judgment in the state court against the receiver, and that she thereby desired to submit herself to the jurisdiction of the court of equity in pursuance of section 3, c. 866, 25 Stat. 836, in order that such judgment might be considered by the court in the adjustment of the equities between the parties and in the payment of claims against the receiver; and that she might obtain the relief to which she was entitled as a judgment creditor. Under these circumstances the court, in the exercise of its discretion, had ample power to permit the pleadings to be reformed so as to properly present the matter.

It is also insisted that "the court erred in holding that the reports of the standing master and accounts of the receiver on file show that the receiver has received sufficient income to pay this judgment." The court below had before it the reports of the standing master and the accounts of the receiver, and has found as a fact that the receiver has sufficient income to pay this judgment. Under the circumstances we are not inclined to disturb the findings of the court in this respect.

It is also assigned as error that the court erred in holding that the judgment which the petitioner is seeking to enforce in this proceeding bears interest. It is insisted that the case of In re Bound v. S. C. Ry. Co. et al., Ex parte H. S. Evans, decided by Judge Simonton, reported in 174 Fed. 729, is controlling. The statute in force at that time was enacted in 1815 (6 St. at Large, pp. 4, 5), and the court in rendering the decision had before it the decision of the Supreme Court of South Carolina in considering that act. The act in question reads as follows:

"Be it enacted, by the honorable the Senate and the House of Representatives, now met and sitting in General Assembly, and by the authority of the same, that all judgments and decrees of the courts of law or equity of this state, hereafter to be obtained and rendered on any judgment, bond, bill, promissory note, or other cause of action, bearing interest, the principal sum of the judgment, bond, bill, promissory note, or other cause of action on which such judgment shall be obtained and rendered, shall continue to bear the same interest as the original cause of action did bear before the entry of judgment thereon; and in the body of every execution hereafter to be issued on such judgment or decree the sheriff or other officer who may be required to execute the same, shall be directed, by virtue of such execution, to levy the interest which shall accrue on the principal of the said debt, obligation or other security on which the judgment or decree has, or may be had, or rendered, up to the day on which such levy shall be made; and satisfaction entered on said execution."

This act was repealed in 1866 (13 St. at Large, p. 463), and the act repealing the same put all judgments on the same footing by providing for interest thereon at 7 per cent. per annum. Section 2 of the act of 1866 reads as follows:

"That in all money decrees and judgments of courts of law and equity, hereafter enrolled or entered, in all cases of accounts hereafter stated, and in all cases wherein any sum or sums of money shall hereafter be ascertained, and being due, shall draw interest, according to law, the legal interest shall be and remain at the rate of seven per centum per annum."

It is obvious that the learned judge who rendered the decision in the case of In re Bound v. S. C. Ry. Co. et al., Ex parte H. S. Evans, supra, overlooked the fact that the act of 1866 (now treated as section 1660 of the Code of Laws of 1902) repealed the act of 1815. If the act of 1815 were in force, there would be merit in the contention of the appellant; but, inasmuch as that act has been repealed, we are governed by the later enactment which provides that in all cases "where any sum or sums of money shall hereafter be ascertained, and being due, shall draw interest according to law, and the legal rate shall be and remain at the rate of seven per centum per annum."

The case of Moore v. Holland, 16 S. C. 15, is very much in point. Judgment had been obtained in the Circuit Court on a bond rendered in 1867 bearing interest at 16 per cent. per annum. The plaintiff contended that the judgment should bear interest at the contract rate. However, the Circuit Judge, in passing upon the question, said:

"The judgment is not a confession of judgment. 6 St. at Large, pp. 160, 161, §§ 1, 2; 11 St. at Large, pp. 72, 75; 3 Blackstone, 395. It is a consent judgment by the court. But under our statutes there can be no difference in the grades of judgments as to the matter of interest. The judgment cannot be considered as a contract, for a contract in its final analysis made by debtor with creditor is but a right of action conveyed by the debtor to the creditor, and the right of action ceases with the judgment, which is but the sentence of the law pronounced by the court. If the contract or note upon which the judgment is based had borne no rate of interest, still the judgment would bear interest at the legal rate of 7 per centum per annum. So the judgment could not bear a higher rate of interest, even though the note bore a rate exceeding seven per centum per annum."

The case was carried to the Supreme Court of the state and that court, after considering the matter, in sustaining the judgment of the lower court, among other things, said:

"Now, was Holland entitled to recover on this judgment 16 per cent., as specified in the note and in the confession, or was the Circuit Judge right in restricting him to 7 per cent. after judgment? We concur with the Circuit Judge, and we do not know that we can add anything to the argument by which he sustains his opinion."

The case of Maner v. Wilson, 16 S. C. 477, is very much in point. The court said:

"A judgment at law bears interest at the rate of 7 per cent. per annum. 13 St. at Large, p. 463."

The judgment of the intervener, having been obtained in the courts of South Carolina, constitutes a full and conclusive claim against the receiver in this respect. The statute of that state provides that such judgment shall bear interest at 7 per cent. per annum. This court

being governed by such statute, we are of the opinion that there is no error in the ruling of the lower court as respects this matter.

For the reasons herein stated, we conclude that the decree entered by the court below is proper, and should be affirmed.