VIRGINIA IRON, COAL & COKE CO. et al. v. OLCOTT.

(Circuit Court of Appeals, Fourth Circuit. July 12, 1912.)

No. 1,099.

1. BANKRUPTCY (§ 217*)—FEDERAL COURT IN BANKRUPTCY—JURISDICTION.

The jurisdiction of the federal court in bankruptcy is exclusive in the administration of affairs of a bankrupt, and it may stay proceedings in the state court begun four months prior to proceedings in bankruptcy.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to prevent the doing of anything embarrassing it in the equitable distribution of the assets of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 323, 330, 340; Dec. Dig. § 217.*]

2. BANKRUPTCY (§ 211*)—FEDERAL COURT IN BANKRUPTCY—JURISDICTION.

A federal court in bankruptcy may in the exercise of its discretion permit lien claimants of the bankrupt to sue in state courts to enforce their liens, and it may modify its order permitting suits in the state courts, provided in so doing it does not deprive the claimants of any right to which they may be entitled in the bankruptcy proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321, 323; Dec. Dig. § 211.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

3. BANKRUPTCY (§ 211*)—JURISDICTION—EQUITABLE DISTRIBUTION OF ASSETS.

A federal court in bankruptcy has the power to preserve, protect, and insure an equitable distribution of the assets of the bankrupt in proceedings for orders permitting lien claimants of the bankrupt to sue in state courts to enforce their liens, and may settle all equities subject to its general equity jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321, 323; Dec. Dig. § 211.*]

4. BANKRUPTCY (§ 211*)—JURISDICTION—EQUITABLE DISTRIBUTION OF ASSETS.

Where a federal court in bankruptcy made an order permitting lien claimants of the bankrupt to sue in state courts to enforce their liens, a modified order permitting the perfecting of such liens, but the validity and extent of the liens when perfected to be determined by the court of bankruptcy, was in excess of the jurisdiction of the court as permitting it to review the action of the state court determining the validity and amount of liens established in the state court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321, 323; Dec. Dig. § 211.*]

Petition to Superintend and Revise Proceedings of the District Court of the United States for the Western District of North Carolina, at Greensboro, in Bankruptcy.

Petition by the Virginia Iron, Coal & Coke Company and others against J. Van Vechten Olcott, an involuntary bankrupt, to revise, in matter of law, proceedings of the District Court of the United States for the Western District of North Carolina, in bankruptcy. Decree of bankruptcy court modified.

On the 3d day of August, 1910, an involuntary petition in bankruptcy was filed against the Ferguson Contracting Company in the United States District Court for the Southern District of New York, and thereafter the company was duly adjudged a bankrupt. At the time the petition in bankruptcy was filed, the respondent, J. Van Vechten Olcott, of New York City, was appointed receiver with power to continue the business of the bankrupt by the United States District Court for the Northern District of New York, and duly qualified and is now acting as such receiver. On the 10th day of August, 1910, a supplemental petition was filed in the United States District Court for the Western District of North Carolina, at Greensboro, N. C., and the respondent was appointed ancillary receiver of the Ferguson Contracting Company for the Western District of North Carolina under a separate bond, and the respondent duly qualified and is now acting as such receiver.

It appears that from time to time the respondent was further authorized to continue the business of the bankrupt, and is now acting under an or-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

der to continue the business until the 1st day of August, 1912, this order being made by both the United States District Court for the Southern District of New York and for the Western District of North Carolina. It appears that, by orders of the United States District Court, the respondent was authorized to prosecute such action or actions as he may be advised are necessary and advisable to recover moneys due the receiver or the bankrupt for work done by either of them; that at the time of the filing of the petition in bankruptcy the bankrupt had a contract with the Winston-Salem Southbound Railway Company for the construction of two sections of the railway in the counties of Davidson, Stanley, and Forsyth, in the state of North Carolina. Under the terms of the contract certain amounts earned by the bankrupt were retained by the railway company as retained percentages pending the completion of said contract. The amount so held by the railway company to August 3, 1910, the date of bankruptcy, was $39,605.28. Of this amount there was due subcontractors the sum of $26,154.63, but this retained percentage was not payable until the work to be done under the contract was performed.

It further appears that, after the appointment of the respondent as receiver of the bankrupt, the respondent by an order made by the United States District Court entered into a new contract to complete the work remaining to be done under the contract between the bankrupt and the Winston-Salem Southbound Railway Company upon the same terms, prices, and conditions. The respondent has completed all the work required to be done under the various contracts, and there is due the receiver the sum of $25,735.10 under the contract in addition to the sum of $39,605.28 above mentioned.

It appears that at the time of the filing of the petition in bankruptcy herein the bankrupt owed the Carolina Portland Cement Company, one of the petitioners, the sum of $2,221.83 for cement, and that thereafter the receiver returned certain empty sacks to the petitioner amounting to $536.85, thereby reducing the amount due by that much. The bankrupt also owed the E. I. Du Pont De Nemours Powder Company, one of the petitioners herein, the sum of $9,466.01 for powder and other explosives, and the sum of $887.70 to the Virginia Iron, Coal & Coke Company, one of the petitioners herein, for coal.

It appears that at various times within the time limited by the statute the petitioners filed liens with the clerks of the superior courts of Davidson, Stanley, and Montgomery counties, claiming and asserting a lien upon the Winston-Salem Southbound Railway Company and upon its property for the indebtedness above set forth. Thereafter the petitioners filed a petition in the United States District Court for the Western District of North Carolina, praying for an order permitting them to take such action as they may deem necessary in the courts of North Carolina to enforce the liens filed as above set forth, and the court, on the 25th day of October, 1910, made an order permitting the petitioners "to institute such suits as they may be advised as necessary to enforce the liens set out in the petition, and that process issue to the said J. Van Vechten Olcott, receiver." Thereupon the petitioners brought suit in the superior court of North Carolina in the county of Forsyth, asking the court to declare that the petitioners had a lien upon the property of the Winston-Salem Southbound Railway Company in accordance with their liens filed as above set forth, and that the court cause to be made such orders as may foreclose said lien.

The petitioners also asked the superior court of North Carolina to make all persons interested in the fund due from the Winston-Salem Southbound Railway Company to the Ferguson Contracting Company or its receiver parties to this action in the state court. There was no money due the bankrupt at the date of the bankruptcy because the retained percentages were not due the bankrupt until the work under the contract had been performed by the contractor.

The bankruptcy of the contractor prevented its performance and the United States District Court authorized the respondent as one of its officers to complete the contract with the Winston-Salem Southbound Railway, and thereby make the retained percentages earned by the bankrupt prior to

bankruptcy payable, together with certain amounts earned by the respondent as receiver, and, after the United States District Court had taken jurisdiction and by its powers made these retained percentages available to creditors, these petitioners brought the action in the North Carolina courts above referred to, and not only sought to foreclose their alleged lien, but sought to make all persons in interest in the fund due the bankrupt or its prior receiver, this respondent, parties to the action, and prayed the state court to make such orders as may be necessary for the parties to be brought before the state court. To these suits it appears that the respondent suggested that the superior court of North Carolina had no further power to proceed in the premises, and thereafter the respondent demurred to the complaints, which demurrer was overruled by the superior court of Forsyth county, and respondent prayed an appeal to the Supreme Court of North Carolina which was granted and will be heard some time in November next unless petitioners are restrained. The complaints of the petitioners in the superior court of Forsyth county prayed that the court assume jurisdiction, not only over the fund earned by the bankrupt prior to the time of bankruptcy, but over the entire fund due the bankrupt and the receiver, regardless of the fact that a portion thereof had been earned pursuant to the contract made by order of the United States District Court, above referred to. In view of the extraordinary proposition that all questions of lien and priority in a bankruptcy proceeding should be determined in a state court, the respondent called the attention of the United States District Court for the Western District of North Carolina to the fact that the petitioners were attempting to determine the questions of priority in the distribution of the funds owing by the railway company to the bankrupt and the respondent in the superior court of the state of North Carolina, without reference to the provisions of the Bankruptcy Law, giving the United States Court exclusive jurisdiction in such matters, and asked the court to revoke and modify the order made by it, authorizing the petitioners to bring such action as they may be advised to enforce the alleged liens above mentioned.

On August 23, 1911, the petitioners, the railway company and others in interest, appeared before the District Court of the United States for the Southern District of New York, which, after hearing the parties, denied the petition of the receiver, and further held that the matter of subjecting said fund to the claims of liens against it and all other like questions could "be properly determined by the North Carolina court in the pending suit," meaning thereby the suit then pending in the superior court of Forsyth county. Thereafter, on the 6th day of February, 1912, the United States District Court for the Western District of North Carolina made an order modifying the former order of the court, dated October 25, 1910, to the extent of allowing the cement company and others the right, privilege, and power in their suits in the superior court of Forsyth county to maintain suit or suits as required by the laws of North Carolina to ascertain the amount of their several and respective claims, and perfect such liens as they may claim to have upon the property of the bankrupt of the said railway company, the validity and extent of the liens, when perfected, to be determined by the court of bankruptcy, and providing that the cement company and others shall take no action or do anything inconsistent with, or beyond the scope of the order, and providing that no execution issue without the further order of the court.

Thereupon the petitioners excepted to the foregoing modification of the former order, and bring the case here on a petition to superintend and revise the proceedings of the court below.

Louis M. Swink and W. M. Hendren (Manly, Hendren & Womble, William Wallace Young, and D. D. Hull, Jr., on the brief), for petitioners.

Robert H. Hibbard and A. B. Kimball (King & Kimball, on the brief), for respondent.

Before PRITCHARD, Circuit Judge, and KELLER and CONNOR, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). It is insisted by counsel for the respondent that we cannot treat this proceeding as a petition to superintend and revise the proceedings in the court below because the record does not contain a statement of finding of fact, and that it does not show whether the court determined the question sought to be reviewed as one of law or fact. Without entering into an extended discussion of this phase of the case, we deem it only necessary to say that, after a careful examination of the record, we are impelled to the conclusion that this contention is without merit, and will, therefore, consider the petitioners' assignments of error.

It is insisted by counsel for the petitioners that the court erred in modifying the order by virtue of which the petitioners had instituted suit in the superior court of Forsyth county against the receiver and against the Winston-Salem Southbound Railway Company.

[1] That the District Court, sitting as a court of bankruptcy, properly assumed jurisdiction of the subject-matter of this controversy, does not seem to be controverted, and that the court in the exercise of its discretion had the power to authorize petitioners to institute suit in the state court in the first instance is not denied by the petitioners. Therefore we are brought face to face with the question as to whether the court below had the right to modify the original order, or whether, in the exercise of its discretion, there was anything contained in said order that deprived the petitioners of the privilege of asserting any right to which they may have been entitled in the bankruptcy proceeding. If the court below had jurisdiction, it necessarily follows that such jurisdiction was exclusive, in so far as the administration of the affairs of the bankrupt is concerned, and the court, in the exercise of its discretion, had the power to stay any proceedings in the state court instituted four months prior to the proceeding in bankruptcy. Once a District Court assumes jurisdiction of a bankruptcy proceeding (as in this instance), it has the power by proper orders to prevent the doing of anything that will at any stage of the proceeding tend to embarrass it in the equitable distribution of the assets of the bankrupt.

[2] It being within the discretion of the court to either grant or deny the order of October 25, 1910, such court, in the exercise of its discretion, had the power to modify said order, provided in so doing it did not deprive the petitioners of the privilege of asserting any right to which they may have been entitled in the bankruptcy proceeding. In the case of the New River Coal & Land Co. v. Ruffner, 165 Fed. 881, 91 C. C. A. 559, the court, among other things, said:

"The jurisdiction of courts of bankruptcy in the administration of the affairs of insolvent persons and corporations is essentially exclusive, and a District Court in bankruptcy has the power to stay a suit in the state court instituted within four months prior to the bankruptcy proceedings, which involves practically all of the property of the bankrupt, and to administer such property itself, even though said suit is for the enforcement of liens."

The case of Willcox, Receiver, v. Jones, 177 Fed. 870, 101 C. C. A. 84, which was a suit in equity, where a receiver of a railroad had been appointed, is analogous to the case at bar in so far as it relates to a court of original jurisdiction having the power to control the distribution of assets in its hands.

The court, in that case, in referring to the case of Central Trust Co. v. St. L., A. & T. R. R. Co. (C. C.) 41 Fed. 551, said:

"In the absence of a provision of this character this statute would lead to interminable confusion and conflict of jurisdiction. Therefore Congress has wisely provided that the courts of the United States in such cases shall have ample power to settle and adjust all equities arising in such suits without hindrance by providing that they shall be subject to the general equity jurisdiction of such courts, thus, among other things, giving a court of the United States the power to say whether the judgment thus obtained is a first lien on the property in the hands of the receiver, to determine when the same shall be paid, the order of its payment, and cases might occur in which it would be necessary for the court to determine as to whether the court wherein the judgment was rendered had jurisdiction. Thereby the courts of the United States are clothed with ample power, by injunction, to prevent judgment creditors from harrassing a receiver or interfering with the property in his possession. The final settlement and adjustment of all claims and the payment of all moneys are to be made subject to the decree of the court appointing the receiver. To this extent the power of such court is supreme. The contention that it is contemplated by this statute that the United States courts should at all times have jurisdiction over such suits in the state courts to such an extent as to review the action of such courts cannot be sustained upon principle, nor is there anything in the statute to warrant such contention."

[3] In that case the court held that a court of original jurisdiction had ample power to settle and adjust all equities arising in such suits by providing that they should be subject to the general equity jurisdiction of such court, and, among other things, that it had the power to determine whether the judgment thus obtained was a first lien on the property in the hands of the receiver, and, as such, was entitled to priority; also when the same should be paid, the order of its payment, and that cases might occur in which it would be necessary to determine as to whether the court wherein the judgment was rendered had jurisdiction.

From the very nature of things a court of bankruptcy necessarily has the power to preserve, protect, and insure an equitable distribution of the assets of the bankrupt in a proceeding like the one now under consideration.

[4] We now come to consider the question as to whether the order complained of, which, as we have said, modifies a former order of the court, contains anything that is inconsistent with the rule that we have announced. Among other things, the court below, in its order, provided:

" * * * The cement company and others are allowed the right, privilege, and power in their suits heretofore brought in the superior court of Forsyth county to maintain suit or suits, as required by the laws of North Carolina, to ascertain the amount of their several and respective claims, and perfect such liens as they may claim to have upon the property of the bankrupt of the said railway company, the validity and extent of the liens, when perfected, to be determined by the court of bankruptcy, and that the

said cement company and others shall take no action, or do anything in-consistent with, or beyond the scope of, this order," etc.

We think that the lower court exceeded its authority when it under-took to reserve the right to determine the validity and extent of the liens. We assume that the court in using the phrase "extent of the liens" intended to refer to the amount of the liens. Under the well-established rule of this circuit as well as other circuits, a court of orig-inal jurisdiction has only the power to determine the priorities of claims and adjust equities, but it does not possess the power to deter-mine the validity or amount of liens that may be established in the state court. To rule that the court had this power would be, in effect, to hold that it had the power to review the action of the state court as respects that question. It would be a work of supererogation in the first instance to permit the receiver to go into a state court and contest the validity of liens if that matter had to be tried again in a court of bankruptcy. As was said in the case of Willcox, Receiver, v, Jones, supra, there is no provision in the federal statutes which authorizes a federal court to review the action of a state court in a proceeding like this. There can only be a review of the proceedings of a state court on a writ of error by the Supreme Court of the United States.

As we have already stated, we are clearly of the opinion that the court below had the right in the first instance to make the order that it did, and in the second instance it had the right to modify the order in question to a limited extent; but the court, undoubtedly, exceeded its authority when it undertook to reserve to itself the right to deter-mine the validity and extent of the liens adjudicated by the state court. In this respect the lower court was in error.

Therefore the decree of the lower court will be modified and affirmed in accordance with the views herein expressed.