### HALL v. WILSON et al.

District Court, N. D. Texas, Dallas Division. October 16, 1929.

No. 4061.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, Tex., for the motion.

Crate Dalton, Walter M. Van Nort, and Paul Raish, all of Dallas, Tex., opposed.

ATWELL, District Judge. The plaintiff entered the state district court to recover $2,281,500. He claimed that he was the general agent of the International Life Insurance Company, a Missouri corporation, in Texas, during his life; that he had been so representing such company for 16 years, during which time he had expended $77,000 in establishing the business; that in July or August of 1928 it became known that the president of the insurance company had defaulted with large sums of money, and that because of such defalcation the United States District Court in Missouri, upon an application for a receivership, had appointed defendants Massey Wilson and Joseph B. Thompson as receivers. He alleged in detail his prospective income under such contract, from new business and from renewals; also:

"That the officers and directors of the company, and particularly the president, mismanaged the concern and defaulted with large sums of money, and that, while the said concern is not insolvent, the above-named receivers have been appointed for the protection of said company against the ravages of the officers and directors, * * * and by reason of the appointment of said receivers the company has discontinued writing new business in Texas, and the receivers of the company have canceled and breached the contract which plaintiff had with the company, and the said company has breached said contract, by reason of all of which the plaintiff has lost the benefits of his contract and has lost the profits which he would have made.

"Plaintiff further says that the items of damage * * * set out * * * were occasioned by the acts and deeds of the International Life Insurance Company, * * * and that said concern is amply solvent; * * * that the breach of the contract, occasioned by the mismanagement of the officers and directors of the company was the direct and proximate cause of plaintiff's loss, and that plaintiff has sustained damages in the sum of $2,281,500."

Citation was served "by delivering to International Insurance Company by serving W. A. Tarver, state insurance commissioner." The defendants seasonably removed the case to this court. Within the statutory time they filed these motions.

Written memoranda have been introduced which tend to show that at the beginning of the discovery of the company's predicament it was doing business in 37 states and in the District of Columbia, as well as in Hawaii. It had a large amount of insurance in force. Some states had already canceled its permission, and many suits to impound assets and protect the policy holders were actually begun and many more threatened. This situation was precipitated by alleged acts of certain officers, who had appropriated and misused or hidden large sums of the company's funds. The insurance commissioner of the state of Missouri had instituted a suit under a statute of that state.

It was at that time that certain plaintiffs entered the United States District Court for the Eastern District of Missouri, by a suit styled J. C. Dale et al. v. International Company of St. Louis, the International Life Insurance Company, Roy C. Toombs et al., as defendants, and S. L. Price and others, as interveners. There grew out of this suit far-reaching orders, judgments, and injunctions. Some of the provisions enjoined agents from suing. Other provisions enjoined creditors from filing suit without leave of the court. The company was ordered to dissolve, and was denied the right to do business. A sale of its outstanding insurance was made to the Missouri State

Life Insurance Company, and reinsurance in that company ordered on August 25, 1928. This latter company paid $50,000 in cash for the business, and contracted to make certain payments during a period of 15 years, aggregating more than $5,000,000. It assumed certain liabilities. The receivers were directed to take steps in accordance with the order, and were directed to cancel such contracts as were terminable, while the Missouri State Life assumed such as were not.

The court found that it would be impracticable to secure a reinsurance of the business of the International, so as to protect policy holders, stockholders, and creditors, unless a contract of reinsurance could be made, and that no such contract could be made, unless the assets of the International were transferred to the reinsuring company; that the plan of sale to the Missouri State Life, and the reinsurance by it, had been approved by a committee of state insurance supervising officials representing the national convention of insurance commissioners, and by the superintendent of the insurance department of the state of Missouri, and that the plan approved by the court was for the best interests of the policy holders, creditors and stockholders of the International.

The plaintiff's contract contained the following provisions: "If this contract terminates except by death;" "should the company's authority to do business in Texas terminate;" and a letter sent after the plaintiff's contract was presented for approval also mentioned "termination."

The only business that is being done in Texas is that which the Missouri company is doing as the purchaser, under the court's order, of the International's business, and as the reinsurance company. Such business is the collection of premiums, upon the policies so reissued.

Other exhibits were presented tending to show that the Missouri Life had paid a note of the plaintiff, which had been guaranteed by the International, and that the plaintiff had also assigned certain renewal premiums, which would be due under business secured in Texas by him from the Missouri Life.

This brief recapitulation of some of the testimony submitted on the motions will serve to give an idea of what has been done, ordered, and decreed by the United States court in the Missouri district.

Article 4763, Rev. St. 1925 of Texas, is as follows:

"Each life insurance company engaged in doing or desiring to do business in this state shall file with the commissioner an irrevocable power of attorney, duly executed, constituting and appointing the commissioner and his successors in office, or any officer or board which may hereafter be clothed with the powers and duties now devolving upon said commissioner, its duly authorized agent and attorney in fact for the purpose of accepting service for it or being served with citation in any suit brought against it in any court of this state, by any person, or by or to or for the use of the state of Texas, and consenting that the service of any civil process upon him as its attorney for such purpose in any suit or proceeding shall be taken and held to be valid, waiving all claim and right to object to such service or to any error by reason of such service; and such appointment, agency and power of attorney shall, by its terms and recitals, provide that it shall continue and remain in force and effect so long as such company continues to do business in this state or to collect premiums of insurance from citizens of this state, and so long as it shall have outstanding policies in this state, and until all claims of every character held by the citizens of this state, or by the state of Texas, against such company, shall have been settled. Said power of attorney shall be signed by the president or a vice president and the secretary of such company, whose signature shall be attested by the seal of the company; and said officer signing the same shall acknowledge its execution before an officer authorized by the laws of this state to take acknowledgments. The said power of attorney shall be embodied in, and approved by, a resolution of the board of directors of such company, and a copy of such resolution, duly certified to by the proper officers of said company, shall be filed with the said power of attorney in the office of the Commissioner, and shall be recorded by him in a book kept for that purpose, there to remain a permanent record of said department."

(1) Is the International Life Insurance Company doing business in Texas?

(2) Are the receivers liable to be sued in Texas upon a contract made by the company and which has been ended by the court action in Missouri, and will the citation served upon the Texas insurance commissioner bring them into court?

(3) What effect does section 66 of the Judicial Code (28 USCA § 125) have, when

read with the judgment of the national Missouri court?

It seems to me that the company is still liable to suit under the terms of the statute, though not doing business in the state. So long as any liability exists against the company upon some agreement that it made while it was doing business, the service of a citation upon the state insurance commissioner would bring it into a Texas forum; to hold otherwise would be to substitute the order of the court for the written law, and would deprive the citizen of an invaluable remedy. Connecticut Mutual v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 43 L. Ed. 569; Mutual Reserve v. Phelps, 190 U. S. 147, 23 S. Ct. 707, 47 L. Ed. 987; Hagler v. Security Mutual (D. C.) 244 F. 863; Lyden v. Western Life Indemnity Co. (D. C.) 204 F. 687; Collier v. Mutual Reserve Fund (C. C.) 119 F. 619.

The second inquiry is also easy of solution, since a receiver stands in the place of the motionless entity that has passed into his hands. McNulta v. Lochridge, 141 U. S. 332, 12 S. Ct. 11, 35 L. Ed. 796; Eddy v. Lafayette, 163 U. S. 456, 16 S. Ct. 1082, 41 L. Ed. 225; T. & P. v. Johnson, 151 U. S. 81, 14 S. Ct. 250, 38 L. Ed. 81; Central Trust v. St. Louis Railway Co. (C. C.) 40 F. 426; High on Receivers (4th Ed.) 544. This general statement is subject to the rule that, since he is an officer of the court, he may not be sued without its consent. Willcox v. Jones (C. C. A.) 177 F. 870; Id., 218 U. S. 679, 31 S. Ct. 227, 54 L. Ed. 1207. [3, 4] The answering of the second question brings us to the third. For the purpose of nullifying the inconvenience to the litigant of seeking permission from the appointing chancellor for the right to sue his receiver, the Congress destroyed the old immunity by providing that any receiver could be sued for his acts. There is reserved to the court the customary equity preservatives. Section 66, Judicial Code (28 USCA § 125).

Does this statute limit such right to such actions as may be based upon the act of the receivers? Is it a complete abrogation of the ancient inhibition? The plaintiff's petition indicates no act of the receivers; neither does the proof. The plaintiff's predicament is due, as alleged by him, to acts of officers of the company. The receivers did that which the court told them to do. This they were bounden to do. But the statute is entitled to a liberal construction. It was and is a limitation on federal jurisdiction. It is a limitation by the law-making power,

which, within constitutional limits, determines federal jurisdiction. In Gableman v. Peoria, D. & E. R. Co., 179 U. S. 335, 21 S. Ct. 171, 172, 45 L. Ed. 220, it is said that it "abrogated the rule that a receiver could not be sued without leave of the court appointing him, and gave the citizen the unconditional right to bring his action in the local courts, and to have the justice and amount of his demand determined by the verdict of a jury. He ceased to be compelled to litigate at a distance, or in any other forum, or according to any other course of justice, than he would be entitled to if the property or business were not being administered by the federal court."

The word "his," in section 66 (28 USCA § 125), is not and was not intended to limit the right to sue to cases where the cause of action arose from the conduct of the receiver himself, or his agents. McNulta v. Lochridge, 141 U. S. 331, 12 S. Ct. 11, 35 L. Ed. 796.

But there is a larger ground suggested by the motion of the defendants. In order to prevent a multiplicity of suits, and to save from the crash which seemed inevitable, the court drew to itself for salvation and solution all of the questions, and all of the property, and all of the liabilities of the tottering and ruined concern. It is the peculiar preserving province of equity jurisdiction to do this very thing, and to save from hurtful catastrophe.

The rule is unquestioned that the court, having the custody of property for administration, may preserve it from external attack. Ex parte Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689; Ex parte Riser, 149 U. S. 191, 13 S. Ct. 793, 37 L. Ed. 698. It would be absurd to permit the institution of suits in other forums to recover received property or to diminish its value. Buckhannon & N. R. Co. v. Davis (C. C. A.) 135 F. 707. Creditors with liens are enjoined from seeking to enforce them in any other tribunal. Minot v. Mastin (C. C. A.) 95 F. 734. Simple contract creditors have the right to go into any other forum and sue the debtor, and thereafter prove up their claim in the manner ordered by the holding court.

In the particular case under scrutiny the Missouri court saw fit to enjoin any and all suitors, and, to say the least, acknowledging, as we must, its lack of power to bind any who were not parties, it must be conceded that an orderly procedure and an harmonious integrity of such procedure suggests that such creditors as were not actual parties thereto should first make known their desire

to the court before instituting any suit in violation of its order. Perhaps this observation may become slightly more serious when we remember that the plaintiff was himself an agent of the International, and that the court specifically enjoined all agents from suing it.

Tempted as the reasoner may be to think of the merits, this decision must not be based upon any alleged waiver of the plaintiff in receiving benefits from the Missouri company, nor in acknowledging the sale to the Missouri company by the assignment of renewals to come from it, nor by the fact that a competent court has adjudicated his principal out of business and has ordered it not to do business.

The confusion and the multiplicity of suits that would result, if agents may disregard the order of the court, is not sufficiently important to overcome, in law, the vitally necessary rule that a party may not be bound nor lose any rights without having his day in court.

There are many matters in this suit that seem to have been settled in that suit, and there are cases when the ordinary rules must give place to the larger reason, which gave us equity jurisdiction, with all of its remedial power. But, again, we return to a fundamental. No power exists in a federal court to restrain or stay a suit against a receiver, which does not threaten the received property. Nor is there any power in any court to order one who does not have the opportunity to resist the making of the order. If a creditor cares to run the risk of being barred from participation in the distribution of the fund which the court is administering, by refusing to abide by the orders made for its distribution, that is his affair.

Worthless judgments are frequently recovered. The final settlement and adjustment of all claims and the payment of all moneys are to be made subject to the decree of the court appointing the receiver. To this extent the power of such court is supreme. Willcox v. Jones (C. C. A.) 177 F. 870, affirming (C. C.) 174 F. 731, certiorari denied, 218 U. S. 679, 31 S. Ct. 227, 54 L. Ed. 1207. Progressive and efficient court work is maintaining the rule that an order limiting time for filing claims is valid. Phelan v. Middle States Oil Corporation (D. C.) 15 F.(2d) 88.

The motion will be overruled as to the service against the International Life Insurance Company and its receivers as receivers. The motion as to jurisdiction will be overruled.