In re **COMMERCIAL FINANCIAL SERVICES, INC., and CF/SPC NGU, Inc., Debtors.**

**Rocky J. Snider, James Lemieux, Mary Dodson, Pamela Soeten, Barbara Orr, and Ella F. Garcia, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Commercial Financial Services, Inc., Defendant.**

**Bankruptcy Nos. 98-05162-R, 98-05166-R.**

**Adversary No. 99–0009–R.**

United States Bankruptcy Court, N.D. Oklahoma.

Aug. 21, 2000.

Mitchell M. McCune/Jed Penney, McCune & Penney, P.C., Tulsa, OK, for plaintiffs.

Larry M. Wolfson, Jerry L. Switzer, Jr., Jenner & Block, Chicago, IL, Neal Tomlins, Ronald E. Goins, Tomlins & Goins, Tulsa, OK, Jay Geller, Law Office of Jay S. Geller, Portland, ME, for defendant.

### *MEMORANDUM OPINION REGARDING CFS'S MOTION TO STRIKE JURY DEMAND AND REPORT AND RECOMMENDATION TO THE DISTRICT COURT REGARDING PLAINTIFFS' MOTION TO WITHDRAW REFERENCE*

DANA L. RASURE, Bankruptcy Judge.

### I. Procedural Background

Defendant Commercial Financial Services, Inc. ("CFS") is a debtor in possession in a chapter 11 bankruptcy case that was initiated by CFS on December 11, 1998. CFS was authorized to operate its business of servicing credit card debt pursuant to 11 U.S.C. §§ 1107 and 1108, and in fact operated such business as a going concern until June 23, 1999. On January 8, 1999, CFS terminated approximately 1400 of its 3800 employees. On June 23, 1999, CFS terminated all but approximately 140 of its remaining employees and ceased operations.

On January 15, 1999, Plaintiffs (employees who were terminated on or about January 8, 1999) filed in this Court a "Complaint—Class Action" asserting claims on behalf of themselves and all others similarly situated, alleging that CFS violated the Workers Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* (the "WARN Act"). A jury demand was indorsed upon the Complaint.

On February 2, 1999, Plaintiffs filed their "First Amended Complaint—Class Action" ("Amended Complaint"), to join plaintiffs who were terminated after January 8, 1999, and on or before February 8, 1999, and again demanded a jury trial.

On February 22, 1999, CFS filed a motion to dismiss the Amended Complaint, contending that the filing of the Plaintiffs' Amended Complaint violated the automatic stay and that Plaintiffs were not entitled to use the adversary proceeding vehicle to assert their claims against the estate. On August 19, 1999, the Court entered an order denying CFS's motion to dismiss. The Court determined that pursuant to 28 U.S.C. § 959(a) (hereinafter "Section 959(a)"), Plaintiffs were authorized to sue a debtor in possession for "Facts or transactions in carrying on business" without obtaining leave of the bankruptcy court. 28 U.S.C. § 959(a). Thus, Plaintiffs did not need to obtain the Court's approval, by virtue of a motion to modify automatic stay or otherwise, before commencing this action.

On December 27, 1999, the Court entered an order certifying this proceeding as a class action.

On January 31, 2000, Plaintiffs' counsel filed 1,498 separate requests for payment of administrative expenses, one on behalf of each of the class members. Each class member requests compensation in an unliquidated amount for the WARN Act violations alleged in the Amended Complaint and further seeks a determination that his

or her claim is an administrative priority claim.

On February 25, 2000, CFS filed its Motion to Strike Plaintiff's [sic] Jury Demand ("Motion to Strike Jury Demand") (Docket # 50). On March 27, 2000, Plaintiffs filed their Objection and Response in Opposition to [CFS's] Motion to Strike Jury Demand (Docket # 55). On April 7, 2000, CFS filed its Memorandum in Support of its Motion to Strike Plaintiffs' Jury Trial Demand (Docket # 60), and on April 25, 2000, Plaintiffs, with the Court's leave, filed a Surreply (Docket # 69).

On April 12, 2000, Plaintiffs filed a Motion to Withdraw the Reference and Brief in Support Thereof (the "Motion to Withdraw Reference") (Docket # 61). CFS responded to the Motion to Withdraw Reference on April 27, 2000 (Docket # 70).

These matters are now fully briefed and ripe for adjudication.

## II. Positions of the parties

CFS contends that by filing this adversary proceeding in this Court and by filing requests for administrative expenses, Plaintiffs have asserted claims against the estate, and thus waived any right to a jury trial that they may have had.

Plaintiffs' argument in favor of their jury trial right is five-fold. They contend that: (1) the last sentence of Section 959(a) guaranties post-petition claimants a jury trial; (2) Plaintiffs' requests for payment of administrative expenses are not "claims;" (3) WARN Act claims are "statutory torts" analogous to personal injury tort claims over which the bankruptcy court does not have "core" jurisdiction pursuant to Section 157(b)(5) of title 28 of the United States Code, and personal injury claimants are entitled to a jury trial in all events pursuant to Section 1411 of title 28; (4) by virtue of the 1994 amendments to the Bankruptcy Code, this Court has the power to conduct jury trials, and Plaintiffs consent to this Court conducting a jury trial; and (5) the Bankruptcy Code, to the extent that it denies Plaintiffs a jury trial, is unconstitutional.

In response, CFS argues that the rule that persons who assert claims against the estate waive their right to a jury trial is not dependent upon the prepetition or postpetition nature of the claim; that Plaintiffs further waived their jury trial rights by failing to timely move to withdraw the reference to the district court; and that Section 959(a) does not afford Plaintiffs a jury trial right because they commenced their action against the estate in Bankruptcy Court. Further, CFS states that it does not consent to a jury trial in this Court.

With respect to the Plaintiffs' Motion to Withdraw Reference, Plaintiffs claim that because their jury trial right will be lost if this Court exercises equitable jurisdiction over this proceeding (because CFS does not consent to a jury trial in the Bankruptcy Court), the District Court must withdraw the reference of this adversary proceeding. CFS argues that Plaintiffs' Motion to Withdraw Reference is not timely and that cause does not exist to withdraw the reference, again because Plaintiffs have waived their right to jury trial by asserting claims against the bankruptcy estate. The parties magnify these arguments in the same manner as presented in the pleadings filed in connection with the Motion to Strike Jury Demand. Thus, the Court considers the Motion to Withdraw Reference and the Motion to Strike Jury Demand in tandem and makes the following findings and conclusions in connection with the Motion to Strike Jury Trial Demand and the following recommendation to the District Court in connection with the Motion to Withdraw Reference.

## III. Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334; 157(a) and (b)(2)(B) and (O); and Miscellaneous Order No. 128 of the United States District Court for the Northern District of

Oklahoma: Order of Referral of Bankruptcy Cases effective July 10, 1984, as amended.

## IV. Findings of fact and conclusions of law

### A. *Plaintiffs' Motion to Withdraw Reference is Untimely.*

■ Bankruptcy court jurisdiction is set forth in 28 U.S.C. § 157. Bankruptcy court jurisdiction exists only to the extent that power is conferred upon, or "referred to," the bankruptcy court by the district court. *See* 28 U.S.C. § 157(a). The District Court has referred to the bankruptcy courts in this district all bankruptcy cases and proceedings to the full extent permitted by Section 157(a). *See* In the Matter of Rules of Court, Miscellaneous No. M–128, specifically the orders dated July 10, 1984 ("Order of Referral of Bankruptcy Cases") and April 11, 1985 ("District Court Rules for Bankruptcy Practice and Procedure," such rules hereinafter cited as "Rule B–___"). Further, the District Court has designated to the bankruptcy courts in this district the power to conduct jury trials to the extent permitted by 28 U.S.C. § 157(e). *See* In the Matter of Rules of Court, Miscellaneous No. M–128 dated June 21, 1995 ("Order Amending District Court Rule for Bankruptcy Practice and Procedure B–14 'Jury Trials'").

Motions for withdrawal of the reference to the bankruptcy court are governed by 28 U.S.C. § 157(d) ("Section 157(d)"), Rule B–6 of the District Court Rules, and Rule 5011 of the Federal Rules of Bankruptcy Procedure. Section 157(d) provides—

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Plaintiffs' sole alleged " 'cause' for the Motion to Withdraw Reference is that CFS objects to the Bankruptcy Judge conducting a jury trial in this matter." Motion to Withdraw Reference at 5.

Rule B–6 provides in relevant part—

A particular proceeding commenced in . . . the Bankruptcy Court shall be transferred to the District Court for hearing and trial by a District Judge only in accordance with the procedure below:

(1) A party seeking such transfer shall file a motion therefor in the Bankruptcy Court certifying one or more of the following grounds:

\* \* \*

(F) Cause exists, within the contemplation of 28 U.S.C. § 157(d), for the withdrawal of the particular proceeding to this District Court (a specification of such alleged cause must be stated).

(2) If movant is an original plaintiff, the motion shall be filed within twenty (20) days after the proceeding is commenced.

Again, Plaintiffs' specified "cause" is that they desire a jury trial to which CFS will not consent.

Plaintiffs filed their original Complaint on January 15, 1999, and their Amended Complaint on February 2, 1999. The Motion to Withdraw Reference was not filed until over one year later—on April 12, 2000. Plaintiffs' Motion to Withdraw Reference is not a "timely motion" as required by either Section 157(d) or District Court Rule B–6(2).

■ Plaintiffs argue that District Court Rule B–6(2)[1] has been superseded by 28 U.S.C. § 157(e), enacted in 1994, which provides that "[i]f the right to a jury trial

---

**1.** The parties, for some reason, refer to this Rule as District Court Rule B–5.

applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial ... with the express consent of all the parties." 28 U.S.C. § 157(e). Plaintiffs contend that they were not required to move for withdrawal of the reference until CFS stated in a pleading that it did not consent to a jury trial in the bankruptcy court. Since Rule B-6(2) required that Plaintiffs file a motion to withdraw the reference within twenty (20) days of the commencement of a proceeding, it was incumbent upon Plaintiffs to determine, in time to move for withdrawal of the reference, whether CFS consented to a jury trial in the bankruptcy court.[2] Consent is an affirmative act; Plaintiffs were not entitled to assume that CFS consented to a jury trial in bankruptcy court until the time CFS affirmatively stated that it did not consent. Furthermore, there is no evidence that Plaintiffs *ever requested* CFS's consent.

Finally, Bankruptcy Rule 9015(b) provides—

> If the right to a jury trial applies, a timely demand has been filed pursuant to Rule 38(b) F.R.Civ.P., and the bankruptcy judge has been specially designated to conduct the jury trial, the parties may consent to have a jury trial conducted by a bankruptcy judge under 28 U.S.C. § 157(e) by jointly or separately filing a statement of consent with-

in any applicable time limits specified by local rule.

Plaintiffs should have obtained CFS's consent, or moved to withdraw the reference, within the time frame allowed by the District Court Rule.

Thus, the Court finds that Plaintiffs' Motion to Withdraw Reference was not a timely motion and Plaintiffs' assumption that CFS consented to a jury trial is not a valid excuse for not filing the Motion to Withdraw Reference within the time fixed by Rule B-6(2).

B. *Plaintiffs lost any jury trial rights by asserting their claims against the estate in this Court.*

 Even if Plaintiff's Motion to Withdraw Reference was not untimely, it should be denied because Plaintiffs are not entitled to a jury trial.[3] The United States Supreme Court has held, in a consistent line of cases under the Bankruptcy Act of 1898 and the Bankruptcy Code of 1978, as amended, that the essence of a bankruptcy court's power is that of efficiently and inexpensively adjudicating claims against a bankruptcy estate, and that once a claimant asserts a claim in the bankruptcy court, it has subjected itself to the bankruptcy court's equitable jurisdiction and has waived trial by jury. It is undisputed that Plaintiffs have asserted claims against CFS in the bankruptcy court. Plaintiffs'

---

**2.** Or Plaintiffs could have commenced their action in District Court. *See* 28 U.S.C. § 959(a).

**3.** In determining whether claimants under federal statutes are entitled to a jury as factfinder, the United States Supreme Court has stated: "[W]e ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was." *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 376, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). "If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Id. See also*

*Fischer Imaging Corp. v. General Electric Co.,* 187 F.3d 1165 (10th Cir.1999).

The Court has found no binding precedent determining that issues brought pursuant to the WARN Act must be decided by a jury under this historical test. Because of the ultimate result of this opinion, however, the Court need not engage in the historical investigation required to determine whether claims analogous to WARN Act claims existed in 1791, whether such an action was at law or in equity, and if at law, what issues must be reserved to the jury in order to preserve the substance of the common law right. For the purposes of this opinion, the Court assumes, without deciding, that Plaintiffs' claims under the WARN Act carry with them a right to jury trial on certain issues.

arguments that the procedures by which they asserted claims preserves their jury trial rights elevate form over substance.

1. *Supreme Court precedent has consistently upheld the bankruptcy court's equitable power to summarily adjudicate and allow or disallow claims against the estate.*

In *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), a case under the Bankruptcy Act, the Supreme Court reaffirmed that bankruptcy courts "have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession" and to deal "with matters of an administrative character, including questions between the bankrupt and his creditors, which are presented in the ordinary course of the administration of the bankrupt's estate.... This is elementary bankruptcy law...." *Id.* at 327, 86 S.Ct. 467 (internal quotes and citations omitted).

The appellant in *Katchen* filed a claim against the estate. In response, the trustee sued the appellant for the return of a preferential prepetition payment of money. Property of the debtor conveyed prior to the commencement of the bankruptcy was not viewed as property in the "actual or constructive possession" of the bankruptcy court, and thus the appellant argued that the trustee could recover the preference only through a plenary action. In plenary actions, as opposed to summary actions, a litigant could demand a jury trial if otherwise so entitled under the Seventh Amendment. *Id.* at 327, 86 S.Ct. 467 (citations omitted). The Supreme Court justified summary proceedings under the Bankruptcy Act as follows:

When Congress enacted general revisions of the bankruptcy laws in 1898 and 1939, it gave special attention to the subject of making (the bankruptcy laws) inexpensive in (their) administration.... Moreover, [the Supreme Court] has long recognized that a chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period, ... and that provision for summary disposition, without regard to usual modes of trial attended by some necessary delay is one of the means chosen by Congress to effectuate that purpose. It is equally clear that the expressly granted power to "allow," "disallow" and "reconsider" claims, ... which is of basic importance in the administration of a bankruptcy estate, is to be exercised in summary proceedings and not by the slower and more expensive processes of a plenary suit.... The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res, ... and thus falls within the principle ... that bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property within their possession.

*Id.* at 328–30, 86 S.Ct. 467 (quotes and citations omitted).

When a bankruptcy court exercised its "summary jurisdiction" to determine claims against property within its constructive possession (*i.e.,* claims against the estate), a legal claim was converted "into an equitable claim to a pro rata share of the res," and thus a claim to which no Seventh Amendment jury trial right attached. *Id.* at 336, 86 S.Ct. 467 (citations omitted).

[It is a] fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity.

So in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankrupt-

cy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods.

*Id.* at 337, 86 S.Ct. 467, *quoting Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881).

After the Bankruptcy Code was enacted in 1978, the Supreme Court had an opportunity to revisit the issue of whether a defendant in an avoidance action brought by a trustee (in this case, a fraudulent conveyance claim) was entitled to a jury trial. *See Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The Court first administered the "historical test" for a civil jury trial right. In determining whether the Seventh Amendment requires a jury to find facts in a case, the Court must look to the practice of English courts in 1791 when the Seventh Amendment was ratified. The Seventh Amendment requires that litigants be afforded a jury trial in actions analogous to "[s]uits at common law" as such actions existed in 1791. The Court determined that a statutory action to recover a transfer was analogous in remedy to the eighteenth century actions of trover and money had and received, actions at law rather than in equity, resulting in a right to a jury trial. *Id.* at 43–49, 109 S.Ct. 2782.

The Court then turned to Articles I and III of the United States Constitution to determine whether Congress could validly assign, by virtue of 28 U.S.C. § 157(b)(2)(H), the resolution of a claim to which a jury trial right attached, *i.e.,* a claim for avoidance of a fraudulent conveyance arising under 11 U.S.C. § 548, to an Article I legislative court that does not use a jury as a factfinder. In discussing the types of issues Congress could constitutionally assign to legislative courts, the Court determined that Congress may not assign the adjudication of "private rights," *i.e.,* rights resembling those arising from state law causes of action between private

parties, to a specialized non-Article III court lacking "the essential attributes of judicial power." *Id.* at 53–56, 109 S.Ct. 2782. The Court concluded that avoidance actions commenced by bankruptcy trustees against third parties "more nearly resemble state-law contract claims brought by a bankrupt corporation ... than they do creditors' hierarchically ordered claims to a pro rata share of the bankrupt *res.*" *Id.* at 56, 109 S.Ct. 2782. Therefore, the Court held, such rights were private rights to which the right to a jury trial attached. In distinguishing private rights from rights that could be constitutionally adjudicated by an Article I court without a jury, the Court evoked *Katchen v. Landy, supra,* as follows:

> [In *Katchen*], [o]ur decision [that the petitioner was not entitled to a jury trial] turned ... on the bankruptcy court's having "actual or constructive possession" of the bankruptcy estate, ... and its power and obligation to consider objections by the trustee in deciding whether to allow claims against the estate.... [W]e expressly stated that, if petitioner had not submitted a claim to the bankruptcy court, the trustee could have recovered the preference only by a plenary action, and that petitioner would have been entitled to a jury trial if the trustee had brought a plenary action in federal court.... We could not have made plainer that our holding in *Schoenthal* [*v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932)] retained its vitality: "[A]lthough petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, ... when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity."

*Granfinanciera,* 492 U.S. at 57–58, 109 S.Ct. 2782.

The distinction between "summary" and "plenary" actions is no longer made in cases arising under the Bankruptcy Code.

However, the jurisprudential principles that placed on one side of a spectrum actions that invoked the essential power of the bankruptcy court to summarily determine and allow, or disallow, claims against the *res* before the Court ("summary" actions) and on the other terminus actions that required access to a full panoply of trial rights, including jury trial rights ("plenary" actions), survived the transition from the Bankruptcy Act to the Bankruptcy Code. Those principles were honed to a sharp distinction in *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990).

In *Langenkamp,* the trustee sued creditors and non-creditors for the return of preferential transfers under 11 U.S.C. § 547. All defendants demanded a jury trial. The Tenth Circuit Court of Appeals held that notwithstanding that some defendants had filed claims against the estate, all defendants were nonetheless entitled to a jury trial of the trustee's preference claim, relying upon *Granfinanciera.* In a short, precise opinion, the Supreme Court reversed, holding that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power," and thus such a claimant was not entitled to a jury trial of the trustee's preference claim. *Langenkamp,* 498 U.S. at 44, 111 S.Ct. 330, *citing Granfinanciera,* 492 U.S. at 58–59, 109 S.Ct. 2782. Those non-creditors—third parties who were otherwise strangers to the bankruptcy proceedings—were entitled to have a jury find facts in a plenary proceeding because they had not invoked the equitable jurisdiction of the bankruptcy court. *Langenkamp,* 498 U.S. at 45, 111 S.Ct. 330. The *Langenkamp* rule, that persons who assert a claim against the bankruptcy estate inherently subject themselves to the bankruptcy court's equitable power to al-

low or disallow claims against the estate, and thus lose any rights to a jury trial, controls in this case.[4]

The Snider Plaintiffs have sued the debtor in possession for damages in bankruptcy court. The Snider Plaintiffs have filed 1,498 separate claims against the estate. Nothing could be a clearer manifestation of an intent to obtain a distribution from the bankruptcy estate. Nothing could be a clearer invitation to this Court to exercise its jurisdiction to allow or disallow claims. Plaintiffs have unequivocally invoked the equitable jurisdiction of this Court.

2. *Regardless of how Plaintiffs denominate their request for distribution, they have asserted claims against the estate.*

Plaintiffs argue that their commencement of an adversary proceeding against the estate is not an act equivalent to filing a proof of claim, the event that invoked the equitable jurisdiction of the bankruptcy courts in *Katchen* and *Langenkamp.* Although a claimant *may* seek the allowance of claims and distribution from the estate by filing a proof of claim, that is not the only way a claim may be asserted. When a claimant asserts a counterclaim in an adversary proceeding commenced by a trustee or debtor in possession, the claimant likewise invokes the bankruptcy court's equitable jurisdiction. *See, e.g., In re Larry's Apartment, L.L.C.,* 210 B.R. 469, 473–74 (D.Ariz.1997) (collecting cases in which courts have construed counterclaims filed by defendants in adversary proceedings commenced by the trustee as claims against the estate, and thus a jury trial waiver). *Cf. Dill v. Southland Corp. (In re LMS Holding Co.),* 2000 WL 177419, 203 F.3d 835 (Table) (10th Cir.2000) (creditors were not entitled to jury trial of their claim against non-debtors where the un-

---

**4.** An extremely logical, consistent and coherent treatment of the subject of the jury trial rights of debtors and creditors as participants in various types of litigation is presented in

*Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242 (3d Cir.), *cert. denied,* 513 U.S. 999, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994).

derlying factual basis was debtor's rejection of franchise agreement which occurred in bankruptcy court).

■ Commencing an adversary proceeding against the debtor *in the bankruptcy court* unquestionably invokes the court's equitable jurisdiction. In *Hadar Leasing Int'l, Inc. v. D.H. Overmyer Telecasting Co.,* 53 B.R. 963 (N.D.Ohio 1984), *aff'd* 787 F.2d 589 (6th Cir.1986), for instance, not only did the plaintiff who filed an adversary proceeding against the debtor in possession subject itself to the bankruptcy court's equitable jurisdiction and waive its right to jury trial on counterclaims filed by the debtor, but also third parties who voluntarily intervened in the adversary proceeding and asserted claims against third party defendants (resulting in non-debtor claims against other non-debtors) likewise waived their right to a jury trial. *Id.* at 979–80. "If any right to jury trial existed, the parties by their own actions have as a matter of law consented to the equity jurisdiction of the bankruptcy court." *Id.*

Plaintiffs argue that they have not asserted a "claim" against the estate; they insist that a complaint seeking recovery for alleged wrongs that accrued postpetition is not a "claim" under the Bankruptcy Code, but rather is a request for payment of an administrative expense. Additionally, Plaintiffs assert that the 1,498 separate requests for payment of administrative expenses are not "claims." Plaintiffs' WARN Act claims against CFS, regardless of the procedural vehicle with which they are asserted, fall unambiguously within the Bankruptcy Code's definition of "claim," however.

■ "Claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(5). Plaintiffs have asserted a "right to payment" from the estate and thus a "claim" against the estate. "The broad definition of claim in Section 101(4) [now 101(5)] includes of necessity post-petition obligations incurred by the trustee or debtor in possession." *In re MacDonald,* 128 B.R. 161, 164 (Bankr. W.D.Tex.1991). Regardless of the semantics involved, Plaintiffs have indeed asserted claims for distribution from the estate.

Moreover, in the Amended Complaint, Plaintiffs ask the Court to determine that their claims have administrative priority over other claims against the estate. Again, Plaintiffs invoke the Court's core equitable jurisdiction to hierarchically prioritize their claims against other claims for the purpose of receiving a distribution from the estate, an essential and exclusive obligation of the Bankruptcy Court. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

3. *Section 959(a) does not permit the bankruptcy court to enter an injunction or decree that would deprive a plaintiff of its right to a jury trial in another court; but it does not prevent a plaintiff from waiving its right to jury trial by maintaining its action in the bankruptcy court.*

■ Plaintiffs claim that Section 959(a) guaranties a jury trial to claimants who sue a debtor in possession for damages arising its postpetition conduct.

Section 959(a) provides—

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject

to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a). This section permits parties to sue court-appointed trustees[5] who conduct business with trust assets in any court of appropriate jurisdiction without first obtaining leave of the court that appointed the trustee.

 Section 959(a) was enacted as an exception to the long-standing Barton Doctrine, which emanated from the case of *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881). The purpose of Section 959(a) can be discerned by reviewing the events that motivated its enactment and subsequent amendment. The Barton Doctrine prescribes that the only court with jurisdiction to entertain claims against a court-appointed fiduciary is the court that appointed the fiduciary. The plaintiff in *Barton* sued a receiver for his negligence in failing to supervise persons hired by him to work on receivership property whose negligence resulted in a fire that spread to plaintiff's property, causing damage. The suit was not brought in the court that appointed the receiver, but rather in another court of otherwise competent jurisdiction. The United States Supreme Court determined that claimants should not be permitted to sue a fiduciary for its conduct in any court other than the court that had jurisdiction over and constructive possession of the *res* of the trust, as it would result in a foreign court adjusting and satisfying claims against the estate to the prejudice of claimants who properly present claims to the appointing court for administration. *Id.* at 130–31. The Court reasoned—

If the court below [the non-appointing court] had entertained jurisdiction of this suit, it would have been an attempt on its part [to] adjust charges and expenses incident to the administration by the court of another jurisdiction of trust property in its possession, and to enforce the payment of such charges and expenses out of the trust property without the leave of the court which was administering it, and without consideration of the rights and equities of other claimants thereto. It would have been an usurpation of the powers and duties which belonged exclusively to another court, and it would have made impossible of performance the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities.

*Id.* at 136.

The plaintiff in the *Barton* case urged, among other arguments, that by "leaving all questions relating to the liability of receivers in the hands of the court appointing them, persons having claims against the insolvent corporation, or the receiver, will be deprived of a trial by jury." *Id.* at 133. The Court responded that "those who use this argument lose sight of the fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction." *Id.*

So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control.... The bankruptcy court may, and in cases peculiarly requiring such a course will, direct an action or an issue at law to aid it in arriving at a right conclusion. But this rests in its sound discretion.

*Id.* at 134.

Justice Miller dissented from the majority opinion in *Barton*. He contended that

---

**5.** The term "trustee" is used throughout this discussion as a generic collective term for "trustees, receivers or managers of any property, including debtors in possession."

parties who were harmed by a trustee conducting business with the assets of the estate should in fairness be entitled to sue the trustee in a jurisdiction in which a jury trial was available, without leave of the court that has empowered the trustee. *Id.* at 139. Congress reacted to the *Barton* case by enacting a statute codifying Justice Miller's view that torts committed by an operating trustee in the ordinary course of business should be permitted to be liquidated in any court of competent jurisdiction. The precursor to the statute now codified at Section 959(a) was intended to provide an exception to the Barton Doctrine, which remains the general rule.[6] *See Diners Club, Inc. v. Bumb,* 421 F.2d 396, 398–99 (9th Cir.1970); *In re Telegroup, Inc.,* 237 B.R. 87, 96 n. 7 (Bankr. D.N.J.1999), *citing In re Television Studio School of New York,* 77 B.R. 411, 412 (Bankr.S.D.N.Y.1987). *See also In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 4–5 (1st Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 2661, 147 L.Ed.2d 275 (2000) ("Congress responded [to *Barton*] by passing the predecessor of the present section 959(a) to suspend the approval requirement for suits arising in the course of carrying out business connected with trust property").

Plaintiffs contend that the second sentence of Section 959(a)—that actions brought by a claimant without leave of the appointing court "shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury"— preserves their jury trial right in this case. The intention of that provision was to protect the appointing court's jurisdiction over the orderly administration of the estate by permitting the use of its equitable powers to enjoin òr otherwise exercise control over the proceeding in the foreign court.

*See Bumb,* 421 F.2d at 399 (in summarizing Justice Miller's concession in his dissent that inspired the second sentence of Section 959(a), the Court stated "[i]f a plaintiff was at liberty to sue the receiver in any competent court without prior leave, so was the appointing court at liberty to use its injunctive powers to protect the receiver or to guard the property in its custody"); *In re Television Studio School of New York,* 77 B.R. 411 (Bankr.S.D.N.Y. 1987); *In re Kish,* 41 B.R. 620 (Bankr. E.D.Mich.1984). In *Television Studio School,* the Court recapitulated the policies of Section 959(a) as follows:

> The first sentence is intended to render debtors-in-possession amendable to suit in a non-appointing forum on causes of action arising in the ordinary activities of a company in reorganization. . . .
>
> The policy behind the second sentence, however, is to limit the seemingly unfettered power to bring suit against a debtor in possession, where to do so would significantly interfere with the orderly administration of the debtor's estate. Thus, while it [is] essential to allow most of these suits to proceed without leave, there will inevitably be instances when to allow a suit of this type to proceed would substantially impede the reorganization of the debtor. As a result, Congress provided the second clause of section 959(a) which empowers the appointing court to use its discretion so as to avoid an unjust result. The standard which has been employed under section 959(a) is that the bankruptcy court must "exercis[e] sound discretion [and] find [] the action would embarrass, burden, delay, or otherwise impede the reorganization proceedings."

*Id.* at 412, *quoting Jaytee–Penndel Co. v. Bloor (In re Investors Funding Corp.),* 547 F.2d 13, 16 (2d Cir.1976). *See also Will-*

---

**6.** In modern practice, the Barton Doctrine mandates that any claim against a trustee for conduct *not* arising out of the operation of a debtor's business be brought in the appointing court. Chapter 7 trustees and non-oper- ating debtors in possession, for instance, cannot be sued in courts other than the bankruptcy court unless the bankruptcy court specifically permits the action to proceed in another jurisdiction.

cox v. Jones, 177 F. 870, 875 (4th Cir.1910) (By virtue of the statute, "Congress has wisely provided [the appointing court] ... the power to say whether the judgment [obtained in another jurisdiction] is a first lien on the property in the hands of the receiver, to determine when the same shall be paid, the order of its payment, and cases might occur in which it would be necessary for the court to determine as to whether the court wherein the judgment was rendered had jurisdiction.").

The Court did not find any modern case in which the "right to jury trial" provision of Section 959(a) was specifically addressed. However, "the provision at the end of subsection (a) for preserving the right to a jury trial was added to clarify the intent of section 125 of Title 28, U.S.C., 1940 ed. [precursor to Section 959(a)]as construed in Vany v. Receiver of Toledo, St.L. & K.C. Ry. Co., [67 F. 379 (C.C.N.D.Ohio 1895)]." Historical and Statutory Notes to 28 U.S.C.A. § 959 (West 1993). In applying the "act of congress which authorizes parties having complaints against the receiver ... to bring suit against him in the courts of the state without leave or permission first having been obtained from the court appointing such officer,"[7] the Court in Vany addressed whether the plaintiff in a case that was removed by the defendant to an equity court had a right to a jury. The Court stated:

7. Vany, 67 F. at 379. The Vany court does not provide a citation to such "act of congress." However, the Supreme Court, in McNulta v. Lochridge, 141 U.S. 327, 12 S.Ct. 11, 35 L.Ed. 796 (1891), refers to the statute as "the act of congress of March 3, 1887, (24 St. 552)." Id. at 330, 12 S.Ct. 11. The statute was apparently amended by the Act of August 13, 1888, 25 Stat. 436. See Willcox v. Jones, 177 F. 870 (4th Cir.1910). The amended statute was later codified at 28 U.S.C. § 125, and in 1948, the former 28 U.S.C. §§ 124 and 125 were consolidated into 28 U.S.C. § 959(a). Historical and Statutory Notes, 28 U.S.C.A. § 959 (West 1993).

8. See Langenkamp v. Culp, supra. Plaintiffs argue that they did not waive their right to a

When a party voluntarily intervenes in an equity proceeding, with such a practice well established, he is supposed to have intervened with knowledge of such practice, and thereby to have subordinated his claim to such mode of proceeding as is customary in such cases. But the act of congress having given a party the right to sue the receiver in state court, where the right to a trial to jury is guarantied him unless waived, if the receiver brings that controversy by removal into the federal court, I think the intent and purpose of the act of congress should be carried out, and that, if he demands it, he should have a trial to a jury in the court to which his case has been removed without his consent.

Id. at 380 (emphasis added). See also Willcox, 177 F. at 873 ("If the claimant intervenes in the suit wherein the receiver is appointed, he thereby waives his right to a trial by jury, which is contemplated by [the precursor to Section 959(a)]."). The "jury trial" provision was incorporated into Section 959(a) in order to codify the conclusion reached in the Vany case, i.e., that a plaintiff does not lose its right to jury trial if its action is involuntarily removed to a court of equity. And, by further reference to Vany and Willcox, it is clear that the "jury trial" provision in Section 959(a) was not intended to "reinstate" a jury trial right to a plaintiff who has waived it by voluntarily asserting its claim in bankruptcy court, where it is well established that no jury trial right inheres.[8]

jury trial because bankruptcy courts may conduct jury trials pursuant to 28 U.S.C. § 157(e). Section 157(e) states—

If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

CFS does not consent. Even if CFS were inclined to consent, the Court does not believe that Section 157(e) was intended to "reinstate" waived jury trial rights. Although the parameters of Section 157(e)'s grant of authority to conduct jury trials has not been clearly established, it appears that the Court

Importantly, Plaintiffs' action is *not* proceeding before another court, as contemplated by Section 959(a), and thus it is unnecessary for this Court to exercise its equitable powers to enjoin the Plaintiffs' suit in another jurisdiction, remove it, or otherwise affirmatively act in a manner that could be construed as a threat to Plaintiffs' jury trial rights. Plaintiffs commenced their suit in this Court. The context in which the precursor to Section 959(a) was enacted and the policies underlying its passage and amendment negate its application to Plaintiffs' action.

The Court notes that in denying CFS's motion to dismiss Plaintiffs' complaint, it determined that Section 959(a) authorized Plaintiffs to file this action against the estate (1) without violating the automatic stay and (2) in the form of an adversary proceeding rather than as a proof of claim. The issue as to whether Section 959(a) preserved Plaintiffs' jury trial right, notwithstanding that Plaintiffs chose to commence their action in this Court, was not before the Court at that time. However, it *was* determined that Plaintiffs' action is properly before this Court,[9] and it was implicitly determined that the proceeding does not significantly interfere with the orderly administration of CFS's estate. Thus, the Court need not and will not exercise any equitable powers that may be reserved to it under the second sentence of Section 959(a). Thus, no action of the *Court* will deprive Plaintiffs of any jury trial rights. Plaintiffs' voluntary act of commencing an adversary proceeding in this forum, however, waived any jury trial rights they may have had. The *Vany* and *Willcox* cases make plain that Section 959(a) was never intended to *confer* jury

trial rights on plaintiffs who have waived them.

### 4. *Plaintiffs' WARN Act claims are not personal injury claims.*

▮ Plaintiffs argue that their WARN Act claims are personal injury claims within the meaning of 28 U.S.C. §§ 157(b)(5) and 1411, and thus they are entitled to a jury trial in district court.

Section 157(b)(5) provides:

The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5). Section 1411(a) provides:

Except as provided in subsection (b) of this section [inapplicable], this chapter [of title 28] and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

28 U.S.C. § 1411(a).

As a basis for their argument, Plaintiffs state that "[d]amages for a violation of the WARN Act sound in tort. The predicate for liability under the WARN Act is comparable to a tort claim in that both require a 'wrongful' act by the Defendant." Surreply at 5. WARN Act claims have been analogized to tort claims for the purpose of determining a statute of limitations, they urge, and thus should be treated as tort claims. Surreply at 6–7. Further, say the

might be authorized to conduct jury trials in certain non-core *Marathon*-type proceedings or in *Granfinanciera*-species preference actions where the defendant has not submitted a claim against the estate. Obviously, the Court could preside over such jury trials only with the consent of all the litigants.

9. The first sentence of Section 959(a) is broad enough to afford Plaintiffs the right to "sue"

CFS in an adversary proceeding—thus, in its prior order, the Court permitted Plaintiffs to assert their claims by virtue of an adversary proceeding, conferring upon them the procedural advantages of Bankruptcy Rule 7001, *et seq.*, rather than dismissing the proceeding as improperly utilizing the adversary proceeding mechanism, as CFS urged.

Plaintiffs, violations of the WARN Act constitute a species of wrongful discharge, which, again, falls within the tort rubric. Surreply at 8.

The fallacy of Plaintiffs' syllogism lies in the fact that not all tort claims seek relief for personal injuries or wrongful death. Numerous torts arise from "wrongful" acts but do not result in bodily injury, *i.e.*, business torts (including but not limited to fraud, tortious breach of contract, breach of fiduciary duty, intentional or negligent interference with actual or prospective relationships, unfair competition or business practices, civil conspiracy) and intentional and negligent torts that result in property damage rather than personal injury. Many statutory torts fall within these non-personal injury categories. Thus, "tort" is not synonymous with "personal injury." To the extent that a WARN Act claim can be characterized as a tort, it is a financial, business or property tort, not a personal injury tort.

Moreover, Plaintiffs do not claim injuries to their person as a result of the alleged violation of the WARN Act, nor could they. The exclusive remedy for violation of the WARN Act is "back pay" and any benefits under any employee plan for a period of up to sixty days. *See* 29 U.S.C. § 2104. The statute imposes a penalty upon employers who fail to give affected employees timely notice of a mass layoff. The penalty is payable to affected employees in an amount calculated as a multiple of a day's wages or salary for each affected employee. The injury to the employee sought to be redressed, if any, is merely financial. Nothing in the statute or regulations remotely suggest that the statutory remedy was intended to compensate an affected employee for emotional distress or other injury to the body or psyche resulting from a mass layoff.

Plaintiffs' citation to authorities does not convince the Court otherwise. Cases cited by Plaintiffs drawing analogies between WARN Act claims and tort claims for purposes of establishing a temporal limitation on commencement of a WARN Act proceeding fail to demonstrate that Plaintiffs' claims are personal injury claims. For instance, Plaintiffs cite a Fifth Circuit case, *Staudt v. Glastron*, 92 F.3d 312 (5th Cir.1996), to support their contention that a tort claim state statute of limitations should apply to federal claims under the WARN Act, which has no limitations period of its own.[10] In *Staudt*, the Court held that the short limitations period in which to file an administrative claim under the Texas Payment of Wages Act was not applicable to WARN Act claims. Though the Court contemplated that the state limitations period for either a tort action (two years) or an action on a debt (four years) *might* be applicable, it did not need to decide which action bore a greater similarity to one under the WARN Act because the action had been brought before *either* of those two limitations period expired. *Id.* at 316.

Moreover, the Tenth Circuit Court of Appeals has conclusively held that a WARN Act action corresponded to a breach of contract action for the purpose of borrowing a state statute of limitations. *See Frymire v. Ampex Corp.*, 61 F.3d 757, 764 (10th Cir.1995). The Tenth Circuit panel reasoned that (1) "borrowing a universally recognized cause of action, such as a contract action, will necessarily further the ... goal of uniformity" among the states; (2) "while employees in most states ... are at-will employees, the WARN Act imposes a federal mandate upon employers that effectively obligates them as if bound by the terms of an employment contract"; (3) "the WARN remedy of back pay mirrors the type of remedy afforded those

---

10. Unfortunately, Congress did not enact a statute limiting the commencement of actions for the violations of the WARN Act. In 1995, the United States Supreme Court explicitly held that analogs under state statutes of limitation, rather than under federal statutes, applied to actions under the WARN Act. *See North Star Steel Co. v. Thomas*, 515 U.S. 29, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995).

who fall victim to an implied contract breach-giving individuals what they would have been entitled to had there been no breach"; and (4) other circuits courts have adopted contract limitations periods to WARN Act claims. *Id.* at 764 (citations omitted). *See also United Paperworkers Int'l Union and its Local 340 v. Specialty Paperboard, Inc.,* 999 F.2d 51, 57 (2d Cir. 1993) (finding Vermont's six year limitations period for contract actions should be applied to actions under the WARN Act).

Thus, the Court concludes that Plaintiffs' action is not one for personal injury or wrongful death, and therefore Plaintiffs are not entitled to a jury trial as personal injury claimants pursuant to 28 U.S.C. § 1411. The Court further recommends that the District Court reject Plaintiffs' suggestion that it must withdraw the reference of this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(5) and/or 1411.

5. *Congress has not exceeded its authority or infringed upon Plaintiffs' constitutional right to a jury trial.*

██ Plaintiffs argue that if the Court finds that they are not entitled to a jury trial under applicable law, then this Court "must find that Congress has [unconstitutionally] established a mechanism that requires Plaintiffs to redress the wrongs perpetrated upon them in a forum that deprives them of a fundamental right [to a jury trial]." As stated above, Plaintiffs could have filed this action in District Court in the first instance and demanded a jury trail, but chose instead to commence an adversary proceeding in bankruptcy court. Plaintiffs did not pursue withdrawal of the reference of this adversary proceeding until over a year after its commencement, well outside the deadline set by the District Court's local rules. Although Congress may be faulted for many things, Plaintiffs' quandary is not one of them.

**V. Conclusion**

This adversary proceeding has been pending for over eighteen months. Mo-

tions have been ruled upon, the class has been certified, the parties have conducted discovery, and a settlement conference has been held. Because the Motion to Withdraw Reference is untimely and Plaintiffs have not established a right to have a jury as a factfinder, the Court recommends that the District Court deny Plaintiffs' Motion to Withdraw Reference.

The Court grants CFS's Motion to Strike Jury Demand. A separate order will be issued contemporaneously with this Memorandum Opinion and Recommendation.

The Clerk of the Bankruptcy Court shall transmit a copy of this written recommendation to the Clerk of the United States District Court for the Northern District of Oklahoma, together with copies of the Motion to Withdraw Reference and response thereto, CFS's Motion to Strike Jury Demand and responses thereto, and all other pleadings referred to in this Memorandum Opinion and Recommendation, and file a certificate of such transmission in this proceeding.